UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| JESSE RAY KINSEY, DENNIE KINSEY<br>and BONNIE KINSEY<br>  *Plaintiffs, Defendants-In-Interpleader* | CIVIL ACTION NO. 03-0627 |
| | JUDGE MELANÇON |
| VS. | MAGISTRATE JUDGE METHVIN |
| AMERICAN UNDERWRITERS LIFE<br>INSURANCE COMPANY<br>TRUSTEES, AMERICAN UNDERWRITERS LIFE<br>  INSURANCE COMPANY TRUST<br> *Defendants, Plaintiffs-In-Interpleader* | |
| VS. | |
| THE HEALTH CARE FINANCING<br> ADMINISTRATION<br>THE U.S. DEPT. OF HEALTH AND<br>  HUMAN SERVICES<br> *Defendants-In-Interpleader* | |
| THE STATE OF LOUISIANA,<br>  DEPT. OF HEALTH AND HOSPITALS<br> *Defendant-In-Interpleader* | |

*REPORT AND RECOMMENDATION ON*
*MOTION FOR DISCHARGE AND DISMISSAL OF*
*PLAINTIFFS IN INTERPLEADER*
*(Rec. Doc. 156)*

Before the Court is a Motion for Discharge and Dismissal filed by plaintiffs-in-

interpleader, American Underwriters Life Ins. Co. (AUL) and Trustees, American Underwriters

Life Ins. Co. Trust on November 30, 2007.[1]  The motion is unopposed by defendants-in-

interpleader, Jesse Kinsey, Dennie Kinsey, and Bonnie Kinsey; The Health Care Financing

Administration and the United States Department of Health and Human Services; and The State

---

[1] Rec. Doc. 156.

2

of Louisiana, Department of Health and Hospitals.  For the following reasons, it is recommended

that the motion be granted.

### Background

Movers (AUL and Trustees) allege the following in their Complaint for Interpleader,

filed on July 2, 2007[2]:  Jesse Kinsey was involved in an automobile accident on March 16, 2002

and sustained severe orthopaedic injuries.[3]  Jesse was convicted of DWI due to his level of

intoxication at the time of the accident.[4]  Prior to the accident, AUL issued a policy of group

health insurance to the American Underwriters Life Ins. Co. Trust and a certificate of insurance

to Jesse Kinsey.[5]

On July 16, 2002, Jesse's claim for benefits due under the policy as a result of the

accident was denied.[6]  The denial was based on a policy exclusion denying coverage for

expenses incurred resulting from or occurring during the commission of a misdemeanor traffic

violation in which the consumption of alcohol substantially contributed to the accident.[7]

---

[2] Rec. Doc. 148.

[3] Id., ¶ 8.

[4] Id., ¶ 8.

[5] Id., ¶ 7.  AUL and Trustees do not explain the reason why American Underwriters Life Ins. Co. issued a policy of group health insurance to the American Underwriters Life Insurance Company Trust.  Judge Melançon, however, notes in his memorandum ruling dated October 6, 2003, that, effective March 1, 1993, AUL and Trustees issued a policy with group number AUM11214 to Dennie Kinsey, Dennie's Pest Control, sponsor.  When Jesse turned 19 and become ineligible for coverage as a dependent under this policy, he applied for major medical insurance with AUL identifying the sponsor/employer as Dennie's Pest Control.  AUL and Trustees subsequently issued a policy with group number AUM11214 to Jesse.  *See* Rec. Doc. 36.

[6] Id., ¶ 9.

[7] Id., Rule 26(f) Report, Rec. Doc. 62, p. 6.

3

On March 10, 2003, Jesse, Bonnie and Dennie Kensey d/b/a Dennie's Pest Control filed suit in state court against Movers, alleging that they had failed to pay policy benefits without good cause and seeking to recover medical expenses, damages, penalties and attorney fees.[8]  The action was removed to this court on April 3, 2003.  The claim was settled on August 17, 2006.[9]

Movers allege further:  On May 1, 2007, AUL received correspondence from Centers for Medicare and Medicaid Services, advising that AUL may be a responsible payor for Jesse's medical expenses in connection with the accident, pursuant to the Secondary Payer Laws. "Medicare was looking to AUL for reimbursement of payments made by Medicare to or on behalf of Kinsey."[10]  Movers recognize their obligation to the Kinseys for policy benefits under the settlement agreement and are also on notice of potential reimbursement claims/liens held by Medicare and Medicaid.[11]  There are competing claims between the Kinseys, Medicare and Medicaid for $81,764.89 of the settlement proceeds.[12]

In order to avoid the danger of double litigation and the possibility of double liability and penalties and interest, Movers filed an interpleader action to require that the Kinseys, Medicare

---

[8] Rec. Doc. 1.

[9] Id., ¶ 10.  The agreement was amended and supplemented on October 24, 2006 and memorialized in a January 4, 2007 letter agreement (Rec. Doc. 148,  ¶ 11).

[10] Id., ¶ 13.

[11] Id., ¶¶ 15-16.

[12] Id., ¶ 18.  AUL and Trustees allege that Medicare has paid $55,149.11 on behalf of Jesse and Medicaid has paid $25,789.01.  Id., ¶ 17.

4

and Medicaid assert their respective claims to the $81,764.89.[13]  They also sought leave to
deposit that same amount into the court's registry.[14]  The motions were granted on July 2, 2007.[15]

On January 8, 2008, pursuant to a joint motion filed by all interpleader defendants, the
United States, the Kinseys, and the State of Louisiana Medicaid Program, the court entered an
order directing the clerk to disburse funds in the amount of $37,143.47, plus interest, minus
administrative fees, to the Justice Department on behalf of the Centers for Medicare and
Medicaid Services.[16]

### *Analysis*

AUL and Trustees now bring the instant motion under Title 28 U.S.C. § 2361 and § 1335
(statutory interpleader), seeking the following:

1.      to be discharged from further liability to the Kinseys, the United States, and the
        Louisiana Medicaid Program;

2.      to be relieved of further responsibility in this interpleader action;

3.      that the Kinseys, the United States and the Louisiana Medicaid program be
        permanently enjoined from any further assertion of claims to the funds and
        dispute at issue in the interpleader;

4.      that the Kinseys, the United States and the Louisiana Medicaid Program be
        enjoined from instituting or prosecuting any proceedings in any state court or
        federal court affecting the funds until further order of the court; and

5.      that they be dismissed with prejudice from this interpleader action.[17]

---

[13] Rec. Doc. 145.

[14] Rec. Doc. 146.

[15] Rec. Doc. 148.

[16] Rec. Doc. 161.

[17] Rec. Doc. 156, ¶ 5.

5

Movers argue that they are disinterested stakeholders because they have conceded liability in the action and have no interest in the outcome of the litigation.[18]

"A prerequisite to filing an interpleader action is that there must be a single, identifiable fund. The legislative purpose of an interpleader action is to remedy the problems posed by multiple claimants to a single fund, and to protect a stakeholder from the possibility of multiple claims on a single fund." Rhoades v. Casey, 196 F.3d 592, 600 n.8 (5th Cir. 1999) (citation omitted).

An interpleader lawsuit may be characterized as a "statutory" interpleader action brought under Title 28 U.S.C. § 1335, or, alternatively, as a "rule" interpleader action brought under Fed.R.Civ.P. 22.  The undersigned finds that this action is a "rule" interpleader action as follows.

"An interpleader action typically involves two stages. In the first stage, the district court decides whether the requirements for rule or statutory interpleader action have been met by determining if there is a single fund at issue and whether there are adverse claimants to that fund." Id..  The court must decide whether jurisdictional requirements for an interpleader action have been satisfied.  General Elec. Capital Assur., 209 F. Supp.2d 668, 670 (2002).  "If the district court finds that the interpleader action has been properly brought the district court will then make a determination of the respective rights of the claimants." Rhoades v. Casey, *supra*.

In order to receive a discharge under "statutory interpleader," the stakeholder must satisfy the jurisdictional requirements of 28 U.S.C. § 1335.  Section 1335 calls for diversity of citizenship between two or more of the adverse claimants and requires that the amount in controversy, which is measured in terms of the value of the stake, need only be $500.  7 Charles

---

[18] Rec. Doc. 156, p. 6.

6

Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1703 (3d ed. 2008).  The citizenship of the stakeholder is irrelevant for jurisdictional purposes in statutory interpleader actions and statutory interpleader is satisfied by minimal diversity between or among the claimants. Id.

Here, AUL and Trustees have alleged that the Kinseys are all Louisiana residents and are domiciled in Iberia Parish.  Also made defendant-in-interpleader is the State of Louisiana, Department of Health and Hospitals.  A state is not a 'citizen' for the purposes of 28 U.S.C. § 1332, under which the federal courts can acquire jurisdiction in cases of diversity jurisdiction. Dacey v. Florida Bar, Inc., 414 F.2d 195, 198 (5th Cir. 1969).  Additionally, the United States is not a citizen of any state within the meaning of the diversity jurisdiction statute. Brumfield v. National Flood Ins. Program, 492 F. Supp. 1043, 1044 (M.D. La. 1980), citing Koppers Company, Inc., v. Garling and Langlois, 594 F.2d 1094 (6 Cir. 1979); United States v. Dry Dock Savings Inst., 149 F.2d 917 (2 Cir. 1945); Darling v. United States, 352 F.Supp. 565 (E.D. Cal. 1972); Jizmerjian v. Department of Air Force, 457 F. Supp. 820 (D.S.C. 1978).

As the United States and the State of Louisiana do not have citizenship for the purposes of diversity, there has been no showing of minimal diversity between two adverse claimants, and the prerequisites of statutory interpleader have not been satisfied.

However, AUL and Trustees have pled subject matter jurisdiction of this interpleader action under 28 U.S.C. §1367, supplemental jurisdiction, and under 28 U.S.C. §1331, federal question jurisdiction.  Subject-matter jurisdiction in suits brought under Rule 22(1) is based on the general-federal-question and diversity-of-citizenship jurisdiction grants found in the United States Code.  7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and

7

Procedure at § 1703.  28 U.S.C.A. § 2410(a) provides that the United States may be named a party in an action of interpleader . . . with respect to real or personal property on which the United States has or claims a mortgage or other lien.  The United States's claim arises under the Medicare Secondary Payer statute, 42 U.S.C. § 1395y(b).  Therefore, there is federal question jurisdiction.

As this court has jurisdiction under original and/or supplemental federal question jurisdiction question, the matter is a proper "rule" interpleader action.

In their unopposed motion for discharge and dismissal, AUL and Trustees disclaim any further interest in the proceeds and move to be discharged and relieved of further responsibility in this interpleader action.  There is no opposition by any of the claimants to motion for discharge, and there is no longer any material controversy involving AUL and Trustees, the undersigned finds that they are entitled to discharge.

As to plaintiffs' request for injunctive relief, Rule 22 interpleader differs from statutory interpleader in that it does not contain authority for the court to enjoin individual actions in state courts.  7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure at § 1717. However, the Fifth Circuit has held that a federal court in a Rule 22 interpleader proceeding may issue an injunction to restrain the parties from pursuing such issues in another federal court pursuant to the All Writs Statute, 28 U.S.C. § 1651.  New York Life Ins. Co. v. Deshotel, 142 F.3d 873, 879 (5th Cir.1998).[19]  The reasoning equally applies to injunctions against state court actions.  *See e.g.* General Ry. Signal Co. v. Corcoran, 921 F.2d 700, 707 (7th

---

[19] "Under the All Writs Statute, a federal court has the power to enjoin a party before it from attempting to relitigate the same issues or related issues precluded by the principles of res judicata and collateral estoppel in another federal court."  Deshotel, 142 F.3d at 879.

8

Cir. 1991) (holding that a federal court presiding over an interpleader action may stay pending state court proceedings involving the same interpled fund under the "necessary in aid of its jurisdiction" exception to the Anti-Injunction Act and/or the All Writs Act).

The motion for injunctive relief is unopposed.  In order to effectuate this interpleader action and avoid the danger of double litigation, the undersigned finds that an order enjoining the the Kinseys, the United States and/or the State of Louisiana from instituting or prosecuting any proceeding in any other federal or state court against AUL and Trustees, which relates to the funds at issue, to be necessary in aid of this court's jurisdiction.  The undersigned therefore recommends that it be granted.

### *Conclusion*

For the foregoing reasons, **IT IS RECOMMENDED** that the court grant the motion for discharge and dismissal with prejudice filed by plaintiffs-in-interpleader, AUL and Trustees, and that this court retain its jurisdiction over the matter for determination of the rights of the claimants to the interpleader fund.

**IT IS FURTHER RECOMMENDED** that the defendants-in-interpleader, the Kinseys, the United States and the State of Louisiana be restrained from instituting any action or proceeding in any other federal or state court to recover the funds at issue and deposited into the registry of the court.

**IT IS FURTHER RECOMMENDED** that the monies deposited into the registry of the court by AUL and Trustees shall remain in the registry of this court pending the outcome of this action as among and between the defendants- in-interpleader, the Kinseys, the United States, and the State of Louisiana.

9

**IT IS FURTHER RECOMMENDED** that AUL and Trustees be dismissed **WITH PREJUDICE** from this interpleader action.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. SeeDouglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir.  1996).**

Signed at Lafayette, Louisiana, on June 24, 2008.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)